IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 24, 2021 Session

**KEVIN FARRELL WELLS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Sullivan County
No. C68-949 James F. Goodwin, Jr., Judge**

_____

**No. E2020-01278-CCA-R3-PC**

_____

Petitioner, Kevin Farrell Wells, appeals the denial of his post-conviction petition arguing that the post-conviction court applied the incorrect burden of proof in evaluating his claims, erroneously denied him relief on a claim of ineffective assistance of counsel, and entered its order beyond the sixty-day statutory deadline. After hearing oral arguments and following a review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and KRISTI M. DAVIS, SP.J., joined.

Josh Hoeppner, Kingsport, Tennessee, for the appellant, Kevin Farrell Wells.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Barry P. Staubus, District Attorney General; and Blake Watson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

A Sullivan County Criminal Court Jury convicted Petitioner of possession of a Schedule II controlled substance with intent to sell or deliver, two counts of possession of a Schedule III controlled substance with intent to sell or deliver, and driving on a revoked license. The jury acquitted Petitioner of two counts, possession of diazepam for delivery or sale and possession of a firearm during the commission or attempted commission of a dangerous felony. He was sentenced to a total effective sentence of thirteen years as a Range III, persistent offender. This Court affirmed Petitioner's convictions on appeal and

-1-

the Tennessee Supreme Court denied his application for permission to appeal. *State v. Kevin Wells*, No. E2015-00561-CCA-R3-CD, 2016 WL 4054942 (Tenn. Crim. App. at Knoxville, July 25, 2016), *perm. app. denied* (Tenn. Nov. 17, 2016).

Petitioner was convicted based on the following evidence as summarized by this Court on direct appeal:

> Deputy Burke Murray of the Sullivan County Sheriff's Department (SCSD) testified that on January 28, 2013, he was a detective in the Narcotics Division and attended a meeting at the Sullivan County Courthouse. After the meeting, Deputy Murray and several other officers were standing outside when they saw a silver Mustang enter the parking lot and pull into a parking space. Deputy Murray saw the appellant get out of the driver's seat and Graham get out of the front passenger seat and go into the courthouse lobby. Investigator Micah Johnston told the officers that he knew the appellant's driver's license had been revoked. Officer Ray Hayes "called and confirmed" that the appellant's license had been revoked, so the officers went inside the courthouse.
>
> Deputy Murray testified that he and the other officers were in "plain clothes," that he identified himself to the appellant, and that he asked for the appellant's driver's license. The appellant said he did not have a license, and Deputy Murray told him that "we saw you drive in." At that point, Graham "interjected and said that she was driving." Deputy Murray asked for her driver's license, and Graham said that it was in the car. Deputy Murray asked "if we could go get it," and Graham said yes. Graham, Deputy Murray, and Investigator Johnston went outside to the Mustang while Officer Hayes remained inside with the appellant. As the officers and Graham were walking to the car, Investigator Johnston asked her if any knives or guns were in the vehicle, and she told him that two guns were in the trunk. Deputy Murray asked Graham if they could secure the guns, and she opened the trunk and told him that "the guns in the car were hers, belonged to her ex-husband." While Investigator Johnston secured the weapons, Deputy Murray asked Graham about the location of her license. Graham opened the passenger door and said her license was in her purse, which Deputy Murray saw on the front seat. He said that he asked if he could get the purse, that he took the purse off the front seat, and that Graham "pointed to it." Deputy Murray said that he handed Graham her wallet and that she got out her license. Deputy Murray stated that as he had taken the purse out of the car, he had noticed "a number" of pill bottles in the purse. Deputy Murray "pointed that out" to Officer Hayes, who had come outside to the car. Deputy Murray put the purse on the hood of the car and "got on the phone" to check Graham's driver's license.

Deputy Murray testified that Graham "made the comment that all the medications in there were hers because she saw me looking at the pill bottles in her pocketbook." Officer Hayes asked her "if the counts were right" and for consent to look at the pills. Officer Hayes then asked her "about the pill counts being off," and she said that she had had a death in the family recently and had over-consumed some of her medications. The officers arrested Graham "for the pills found in the car and the guns," and she asked them to get a telephone number for her from her cellular telephone. She gave the officers the passcode for the telephone, and Officer Hayes accessed the telephone and gave her the number. Deputy Murray said that they kept the telephone in order to search it for evidence of distributing and selling the pills.

On cross-examination, Deputy Murray acknowledged that Graham had a valid driver's license. He testified that he and two other officers interviewed the appellant after the appellant's arrest and that they did not record the interview. Defense counsel asked Deputy Murray, "Okay, and [Graham] had recently, like November 10th is when she and Mr. Wells got married[?]" The officer answered, "I don't know that date."

On redirect examination, Deputy Murray testified that during the appellant's interview, the appellant stated that he had a "drug problem," that he had used Roxycontin and Roxicet, and that he often sold Roxicet at work. Roxicet was a Schedule II controlled substance.

Investigator Micah Johnston of the Kingsport Police Department (KPD) testified that in January 2013, he worked in the KPD's Vice and Narcotics Unit. On January 28, he and other officers were outside the Sullivan County Courthouse and noticed a vehicle "pull up." The driver got out of the car, and Investigator Johnston recognized him as the appellant. Investigator Johnston knew that the appellant's driver's license had been revoked and told Deputy Murray because they were in Deputy Murray's jurisdiction. Investigator Johnston verified the status of the appellant's license, the officers went inside, and the officers approached the appellant.

Investigator Johnston testified that after they talked with the appellant, they spoke with Graham. Investigator Johnston and Deputy Murray "escorted" Graham to her car and asked if she had anything illegal in the vehicle. He explained that "we always ask if there are any narcotics, guns, anything of that nature." Graham gave the officers consent to search the car, told them that weapons were in the trunk, and opened the trunk for them. Investigator Johnston searched the trunk and found two handguns wrapped in clothing

and ammunition in a man's boot. He found a cigarette pack containing "numerous pills" in the passenger compartment. At first, he said he found the cigarette pack in the storage compartment of the passenger door. However, he later stated that he could not remember if he found the pack in the driver's door or the passenger's door.

On cross-examination, Investigator Johnston acknowledged that when he and Deputy Murray walked Graham to her car, Graham had not committed any crime. Graham was honest with them about the guns in the trunk, and neither gun was loaded.

Officer Ray Hayes of the SCSD testified as an expert in illegal narcotics trafficking in Sullivan County that on January 28, 2013, he attended a narcotics meeting. Officers were standing outside and saw a gray Mustang pull into the parking lot. The appellant got out of the driver's seat, and Graham got out of the passenger seat. Investigator Johnston advised the other officers about the appellant's driving history and checked with his dispatcher about that history. Officer Hayes also verified the appellant's driving history with his dispatcher. After Officer Hayes confirmed that the appellant did not have a valid driver's license, the officers arrested the appellant in the courthouse. Officer Hayes watched officers take the appellant to "booking" and then went outside to assist Deputy Murray and Investigator Johnston with Graham. The Mustang's trunk was open, and Investigator Johnston was searching it. Deputy Murray and Graham were standing by the passenger side of the car, and Deputy Murray asked Officer Hayes to search Graham's purse. Officer Hayes said that they obtained Graham's consent, that he searched the purse, and that he found pills and pill bottles. Officer Hayes also found pill bottles in and near the center console, and Investigator Johnston gave Officer Hayes a cigarette pack that he had found in the pocket of the driver's door. The pack contained two white tablets of buprenorphine, also known as Suboxone.

Officer Hayes testified as follows regarding the pill bottles he found: A pill bottle in the purse was prescribed to Graham and contained two dihydrocodeinone pills. A second bottle in the purse was prescribed to Graham for promethazine but contained oxycodone. A third bottle in the purse was prescribed to Graham for oxycodone but was empty. A fourth bottle in the purse was prescribed to Graham for diazepam and contained diazepam. A bottle of Equate gas relief pills in the purse contained three pink pills that were oxycodone, fifteen milligrams. A pill bottle in the console was a prescription bottle, but Officer Hayes could not read "who it's for or anything like that." A second prescription bottle in the console had Graham's name on it for Suboxone, eight milligrams, but was empty.

-4-

Regarding the manner in which the pills were packaged, Officer Hayes stated as follows:

> A lot of times when they have illegal narcotics such as pills they will put it in another pill bottle to – so a lot of people look at it and see that's what it is, they won't open it up and look inside. So what they do is they put that in there to make somebody look and say, "Oh, that's all it is, it's gas relief," as in the Equate gas relief and they might not look through it but we looked through it and that's what we found, the illegal narcotics.

Officer Hayes testified that in addition to the pill bottles, he also found urine in a "syringe type bottle." The bottle was "in the driver's compartment." After the officers arrested Graham, she said she needed to get a telephone number from her cellular telephone. She gave the officers her "pin" for the telephone, and they accessed the telephone. They gave the number to Graham and collected her telephone as evidence. Officer Hayes later applied for and received a search warrant for the phone. After he executed the warrant, he interviewed the appellant. During the interview, the appellant admitted that he had a "pill problem" and said that he took seven or eight Oxycontins per day. He also stated that he was selling Oxycontin and Suboxone at his place of employment. Officer Hayes asked to search the appellant's cellular telephone, but the appellant refused.

Detective Matthew Price of the SCSD testified as an expert in the forensic analysis of digital devices that he downloaded instant messages to and from Graham's iPhone onto a "thumb drive" and gave the information to Officer Hayes. Over the appellant's objection, Detective Price read some of the messages for the jury. For example, on December 6, 2012, Graham's phone received a message stating, "'I want two if you got it.'" A message sent from Graham's phone replied, "'Okay, yeah, we can prob come by while we are out.'" On December 13, 2012, Graham's phone received a message stating, "'Hey, do you have two or three of those things with you[?]'" On December 26, 2012, a message was sent from Graham's phone that said, "'If you need something I can get Kevin to see you somehow after while if you want.'" About three hours later, the phone received messages stating that "'Rick said he wants two, too, so four altogether'" and that "'They're just 20, right[?]'" Shortly thereafter, Graham's phone sent a message that said, "'He gonna be in the Mustang ... and he will pull in the back of the corner like we usually do[.]'" On January 2, 2013, Graham's phone sent a message that stated, "'[W]ell I only have three and some people at Kevin's work want some so just text me when you know and if I need to I can get some more in the

morning.'" On January 10, 2013, Graham's phone received a message that said, "'God these [f***ing] heads have done nothing but ring my phone off the hook[.]'"

On cross-examination, Detective Price acknowledged that he did not know who sent any of the messages. Defense counsel for the appellant asked if the messages could have been taken out of context, and Detective Price answered, "[A]ll I did was [perform] the extraction and turn my results over to Detective Hayes."

Officer Hayes was recalled by the State and testified that he thought the messages read by Detective Price were pertinent to the investigation of this case. He stated that "heads" in the January 10 message could have been referring to "pill heads," people trying to buy pills for their addiction. At the conclusion of Officer Hayes's testimony, the State rested its case.

Angela Graham testified that she was prescribed oxycodone for pain in her back, legs, knees, and feet in 2006 or 2007. In December 2010, she underwent gastric bypass surgery, lost a lot of weight, and felt like she no longer needed the pain pills. A new doctor prescribed buprenorphine and conducted "pill count[s]" to make sure she was taking the correct amount of medication every month. In November 2012, Graham's gallbladder was removed, which resulted in "a lot of issues" due to the gastric bypass surgery.

Graham testified that in January 2013, she was living in Kingsport with her two teenage daughters "and sometimes Kevin." On January 23, Graham's mother died unexpectedly, and she was "very upset." She said she had a prescription for diazepam, also known as Valium, and she acknowledged that five pills were missing from the bottle when she was arrested on January 28. She said that she had consulted her doctor and that he had told her that she could "take a couple of extra considering the circumstances." In addition to her prescriptions for buprenorphine and diazepam, Graham also had prescriptions for oxycodone and dihydrocodeinone.

Graham acknowledged that on January 28, she told the officers that she was driving the Mustang. The officers handcuffed the appellant, and Graham asked them not to take him to jail. The officers asked to see her driver's license and "escorted" her to the car. Graham told the officers that two guns were in the trunk. She told the jury that the guns and boots in the trunk belonged to her ex-husband, whom she had divorced in June 2012. Graham acknowledged that the pills in the purse and the cigarette pack were hers and said that she had to take gas pills every day for the rest of her life. She stated that she "overlooked" having the wrong pills in the wrong bottles.

Graham testified that the appellant worked for Hutchinson Sealing and made seals for speaker boxes. She stated that she helped him and that the messages sent to her iPhone and read by Detective Price were referring to the seals or energy drinks. She said she did not sell prescription drugs.

On cross-examination, Graham testified that she did not send all of the messages from her iPhone. She said that she did not give the officers the passcode for her phone and that they obtained access to the phone by answering it when the appellant called her from jail. She acknowledged that the January 10 message about "heads" was sent to her from the appellant's telephone but denied knowing that the appellant was selling drugs. She maintained that the messages in question were referring to speaker seals.

*Id.* at *1-4.

*Pre-trial Motions*

Prior to trial, Petitioner and co-defendant Graham each filed motions to suppress the evidence found in co-defendant Graham's car and purse. The motions were heard on November 6, 2014, approximately one month before trial. Deputy Murray, Investigator Johnston, and Officer Hayes testified for the State; co-defendant Graham testified in support of the suppression motion. *Id.* at *5-6. The testimony of the three officers was similar to their testimonies at trial. *Id.* at *1-6. The three officers observed Petitioner get out of the driver seat of the Mustang and enter the courthouse with co-defendant Graham. *Id.* at *5-6. The officers went inside the courthouse after Officer Hayes verified that Petitioner's license had been revoked. *Id.* at *5. When Deputy Murray asked Petitioner for his license, co-defendant Graham "spoke up" and insisted that she had driven her and Petitioner to the courthouse. *Id.* Co-defendant Graham gave Deputy Murray and Investigator Johnston the car keys to open the trunk and gave consent to look through her purse. *Id.* at *5-*6.

In denying co-defendant Graham's motion to suppress, the trial court found that the encounter between co-defendant Graham and the officers was consensual and was initiated by her. *Id.* at *6. The trial court accredited the officers' testimony that co-defendant Graham had given them consent to search the car and her purse. *Id.* The court rejected Graham's account of the encounter and ensuing search and noted for the record how she "rolled her eyes" while the officers testified and even rolled her eyes as the trial court was ruling from the bench. As for Petitioner, the trial court found that he lacked standing because "it was [co-defendant Graham's] car." *Id.*

The day before trial, Petitioner filed a motion in limine, inter alia, to exclude any reference to telephone text messages sent by him or co-defendant Graham. The motion in

-7-

limine was heard the morning of trial, December 9, 2014. Co-defendant Graham advised the trial court that she was joining in the motion in limine at the hearing. Petitioner argued that the text messages were speculative, "much more" prejudicial than probative, and that the State was "using past instances to try and convict them." Co-defendant Graham added that none of the text messages were transmitted on the day she and Petitioner were arrested on January 28 and therefore constituted "circumstantial evidence" of prior bad acts.

The State responded that the meaning or "interpretation" of the text messages was an issue to be determined by the jury and emphasized three times that the messages came from co-defendant Graham's phone, not Petitioner's. The State added that even if the text messages were evidence of prior bad acts, they were admissible to show the defendants' intent. The trial court agreed with the State, stating that the texts "came in a very short time before January 28th," that they were probative to the defendants' intent, and that the probative value of the texts was not outweighed by the danger of unfair prejudice. The trial court left open the possibility of "revisit[ing]" the issue:

> That's going to be my ruling at this point. If during the course of the trial it becomes evident that that – what I'm trying to say is I'm going to overrule that part of the Motion in Limine and if the defense wants me to revisit that during trial based on different proof that comes in then raise it and we'll have a jury out issue.

As the trial court prepared to end the hearing and bring in the jury, counsel for co-defendant Graham moved to suppress the text messages because Sullivan County Sheriff's deputies used co-defendant Graham's cell phone after she was placed under arrest and before the search warrant was obtained. Counsel for co-defendant Graham argued that any evidence obtained "after [the deputies] used the phone prior to the search warrant" should be suppressed as "fruit of the poisonous tree." Counsel for co-defendant Graham maintained that co-defendant Graham had not given the officers consent to use her phone "after the encounter with the police was terminated."

The trial court reviewed the search warrant and read the entirety of the warrant into the record. The last passage of the warrant indicated that a forensic image of the contents of co-defendant Graham's cell phone was made to protect the phone from being destroyed or erased while a search warrant was obtained but that neither the cell phone nor the forensic image of its contents was searched:

> To insure that the evidence contained in the subject phone was preserved for this search warrant this phone was taken to Detective Matthew Price for the purpose of making a forensic image of the contents of the phone. Your affiant and Detective Price are aware that the contents of the phone that is the subject of this application can be permanently erased or deleted remotely even though the phone was in the custody of law enforcement and that

exigent circumstances justified the imaging of the contents of the subject phone. Neither the affiant nor Detective Price have reviewed the contents of the image made and nothing contained on the subject phone is included in the probable cause stated herein.

The trial court denied co-defendant Graham's motion to suppress because the probable cause statement of the affiant was not based on "anything that they would have taken off of the phone after they took it."

*Post-conviction Hearing*

At the post-conviction hearing, trial counsel testified that he was retained to represent Petitioner and represented him from the preliminary hearing through the motion for a new trial. Trial counsel did not represent Petitioner on appeal. When he began representing Petitioner, trial counsel had thirty-two years of practice devoted exclusively to criminal defense and prior to being hired by Petitioner, had tried "between 75 and 100 jury trials" including defending clients on drug charges.

Trial counsel testified that he was "very aware of the facts" of the case after his initial meeting with Petitioner and did not recall learning anything new afterwards. In developing a strategy, trial counsel did not think Petitioner was guilty and advanced the theory that Petitioner was "holding" co-defendant Angela Graham's prescription medication because they had attended a funeral the day before. To advance this theory, co-defendant Graham testified at trial. Trial counsel explained that there were two reasons to have her testify: Petitioner had a criminal record whereas co-defendant Graham did not, and the only way to get in evidence about the funeral was through her. Petitioner and co-defendant Graham were married at the time of the arrest. Graham had separate legal counsel with whom trial counsel discussed the case. Trial counsel confirmed that he was "ready for trial." Petitioner and co-defendant Graham were charged with the same offenses and were tried together.

Trial counsel testified that he filed a motion to suppress the pills found in co-defendant Graham's car, and that motion was denied because Petitioner lacked standing. Trial counsel also moved to exclude the text messages on co-defendant Graham's cell phone because it was "prejudicial" and irrelevant to "why [Petitioner] was possessing his wife's drugs from going to the funeral the day before." Trial counsel maintained that he moved to suppress or exclude the text messages twice. He confirmed that he filed a motion in limine the day before trial "to reiterate the same motion (to suppress) that we had filed before." The motion in limine was heard and argued the morning of trial. Trial counsel did not "see any problem" in filing the motion in limine the day before trial because "[i]t's done very often in that manner[.]"

Trial counsel testified that he was "familiar" with *Riley v. California*, 573 U.S. 373 (2014). He could not recall "exactly" when he first heard about *Riley*. He was aware that in *Riley*, the United States Supreme Court held that a warrantless search of cell phones was unconstitutional. He did not recall whether *Riley* was raised in the case. He maintained that on direct appeal this Court did not rely on *Riley* in addressing the issue of the text messages. Trial counsel recalled that the cell phone was seized before a warrant was obtained. He did not recall co-defendant Graham giving the police the passcode to her phone so that she could retrieve a phone number. He also could not recall the police making a forensic copy of the cell phone before the warrant was obtained. He did recall however, that Petitioner lacked standing to challenge the seizure of co-defendant Graham's phone. The text messages were introduced over the objections of Petitioner and co-defendant Graham.

Trial counsel "vaguely" recalled Deputy Murray testifying that Petitioner admitted to having a drug problem and selling drugs at work. Instead of objecting to that portion of Deputy Murray's testimony, trial counsel made the strategic decision to cross-examine Deputy Murray on the sheriff's office policy and procedure on documenting suspect statements. According to trial counsel, "the most effective way to impeach his credibility" was to cross-examine Deputy Murray about police procedure in interviewing suspects. Petitioner's interview was not recorded on audio or video. Trial counsel added that he did not want to draw attention to Petitioner's admission about selling drugs at work and having a drug problem.

Trial counsel also testified that he filed a motion for a new trial. He agreed that an issue not raised in the motion for a new trial is waived on direct appeal. He testified that he challenged the admissibility of the text messages in the motion for a new trial by averring that "the proof didn't conform to the evidence." He did not challenge Deputy Murray's testimony about Petitioner's statement in the motion for a new trial. He had reviewed "part of" the direct appeal opinion and thought that the issue of the admissibility of the text messages constituted harmless error.

On cross-examination, the State refreshed trial counsel's recollection about the basis for the trial court's denial of the suppression motions of both Petitioner and co-defendant following a joint hearing. Trial counsel acknowledged the trial court's findings that co-defendant Graham was not credible and that she gave deputies consent to search her car and seize her phone. The State introduced without objection the transcript of the suppression hearing, Petitioner's motion to suppress, co-defendant Graham's motion to suppress, and Petitioner's motion in limine. The trial court asked trial counsel whether he filed the motion in limine to preserve the issues for appeal to which trial counsel replied in the affirmative. Trial counsel testified that Petitioner did not testify at trial because his criminal record was admissible for impeachment.

Trial counsel testified that he reviewed the warrant to search co-defendant Graham's phone. According to trial counsel, co-defendant Graham's counsel argued that the text messages from co-defendant Graham's phone should be suppressed because they were the result of a search incident to arrest. The State countered that the phone was seized under exigent circumstances to prevent a remote wipe of its contents and that the phone was not searched until a warrant was obtained. The trial court ruled that Petitioner lacked standing to challenge the admission of the text messages. While co-defendant Graham continued to object to the introduction of the text messages as a matter of trial strategy, trial counsel did not continue to object for fear of "repuls[ing]" the jury against him and Petitioner. Trial counsel explained his strategy based on experience, "I have done that on prior occasions and it comes to the point where the judge calls the defendant's lawyer down, the jury gets repulsive against him or turns a jury off and that's what would have happened because you can try a judge's patience only so many times." He added, "I argue with them as long as I can before I think they're going to come after me." The jury received all sixty-three pages of co-defendant Graham's text messages.

Because the trial court ruled the text messages to be admissible, trial counsel argued that the text messages were irrelevant and prejudicial because none of them were sent by Petitioner or relevant to whether he committed the charged offenses. Furthermore, many of the text messages were sent well before the day of the arrest.

Insofar as Deputy Murray's testimony about Petitioner's admission to having a drug problem and selling drugs at his workplace, trial counsel reiterated that he chose to attack Deputy Murray's memory of Petitioner's statement by cross-examining him about the Sullivan County Sheriff's Office policy and procedure on recording a suspect's statement. Trial counsel added that Deputy Murray's testimony about Petitioner admitting to having a drug problem and selling drugs at work was admissible as a statement against interest. Thus, he declined to object and receive an unfavorable ruling for fear that "the jury would look at me as if I didn't know what the rules were."

Trial counsel also reiterated that he filed a motion for new trial arguing that the evidence was insufficient to support the convictions, that the text messages did not establish that Petitioner committed a crime, and that the State failed to prove Petitioner possessed the intent to sell or deliver the drugs found in co-defendant Graham's purse.

Trial counsel testified that he understood the plain error doctrine and agreed that the issue of whether the text messages should have been excluded under Tenn. R. Evid. 404(b) was reviewed for plain error. This court determined that no unequivocal rule of law had been breached in the trial court's decision to admit the text messages. Trial counsel was not aware if co-defendant Graham had appealed her convictions.

-11-

Following closing arguments and before concluding the hearing, the post-conviction court informed both parties that it would endeavor to deliver a written opinion within the statutory sixty days but that it would be difficult to do so for the following reasons:

> I'm going to tell you right now it's not going to be done in 60 days. I've got at least five post-conviction orders ahead of you. I have to get a transcript. I'm probably going to try to get the audio recording as well so I can go back and listen to it to speed things up but I'm going to do my very best to get the order filed with the 60 days after I even get the transcript or the audio recording. But I will work diligently to try to get that as quickly as possible.

The post-conviction hearing was held on January 30, 2020. The record shows that the post-conviction court entered two notices of "unforeseeable delay" in completing the order. The first notice was entered on May 29, 2020, and notified the parties that "[d]ue to the Court's trial schedule, the need for a transcript of the hearing, and . . . to review relevant transcripts of the trial and hearings," there has been an unforeseeable delay in completing the court's written ruling. The post-conviction court notified the parties that the written ruling would be filed "no later than 31 July 2020." The second notice was entered on July 31, 2020, notifying the parties of the post-conviction court's intent to file a written ruling no later than August 31, 2020 "[d]ue to the Court holding court every business day from 26 May 2020 through 30 June 2020 due to the public health emergency caused by the novel coronavirus, COVID-19, as well as the Court's efforts to restart jury trials[.]"

As promised in its last notice, the post-conviction court issued a written order on August 31, 2020. In denying relief, the post-conviction court accredited the testimony of trial counsel, the only witness called to testify at the post-conviction hearing. The post-conviction court made extensive findings of fact concerning each claim raised by Petitioner. The post-conviction court concluded that trial counsel's performance was not deficient or prejudicial. Petitioner filed a timely appeal.

**Analysis**

On appeal, Petitioner claims the post-conviction court abused its discretion by applying the incorrect burden of proof in addressing his ineffective assistance of counsel claim, improperly denied his claim for ineffective assistance of counsel, and violated the Post-Conviction Procedure Act by entering its order more than sixty days after the post-conviction hearing. The State responds that under de novo review the post-conviction court applied the correct burden of proof and properly denied relief on the ineffective assistance of counsel claim. The State argues that Petitioner suffered no prejudice from the post-conviction court's delay in entering its order which was due to unforeseen and extenuating circumstances. We agree with the State.

-12-

## I. Post-conviction Court's Application of the Clear and Convincing Evidence Standard of T.C.A. § 40-30-110(f).

First, Petitioner contends the post-conviction court abused its discretion in addressing his claims by stating the incorrect burden of proof for demonstrating ineffective assistance of counsel in its order denying him relief. Petitioner insists that the post-conviction court's incorrect statement of the law runs contrary to *Strickland v. Washington*, 466 U.S. 668 (1984) and Tennessee Code Annotated section 40-30-110(f), and violates both the federal and state constitutions. The State argues that the post-conviction court's "imprecise articulation" of the burden of proof is not a basis for relief and avers that the post-conviction court nevertheless applied the correct legal standard in determining Petitioner's claim to be without merit.

A defendant seeking post-conviction relief bears the burden of proving his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. 28, § 8(D)(1). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). In *Strickland*, the United States Supreme Court established a two-prong test to demonstrate ineffective assistance of counsel. This test requires the petitioner to prove both deficient performance of counsel and prejudice to the defense. 466 U.S. at 687. Deficient performance requires proof that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Whether the post-conviction court applied the correct burden of proof is a question of law that is reviewed de novo with no presumption of correctness. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009) (citing *Green v. Moore*, 101 S.W.3d 415, 418 (Tenn. 2003)).

At issue is the following sentence from the post-conviction court's order setting forth a petitioner's burden of proof for ineffective assistance of counsel claims:

> In a request for post-conviction relief for denial of effective assistance of counsel at trial, a petitioner has the burden of proving by clear and convincing evidence that (1) the attorney's performance was deficient and (2) the deficient performance prejudiced the defense, rendering the outcome unreliable or fundamentally unfair.

We agree with the State that the post-conviction court's statement about the burden of proof for ineffective assistance of counsel claim is one of "imprecision in the use of its language."

Petitioner maintains that the remainder of the court's order should be ignored. Because we must conduct de novo review, we are not confined to one sentence in the post-conviction court's sixteen-page order of which eight pages are devoted to the court's findings and conclusions of law. *Dellinger*, 279 S.W.3d at 293. De novo review of the post-conviction court's lengthy order shows that the post-conviction court cited the correct standard for establishing ineffective assistance of counsel immediately following the sentence quoted above. *Id.* at 294 (judgment denying post-conviction relief affirmed despite post-conviction court's imprecise statement that the burden to prove both *Strickland* prongs is by clear and convincing evidence where post-conviction court's order included an earlier reference to the correct *Strickland* standard).

The record demonstrates that the post-conviction court correctly stated the two prongs of the *Strickland* analysis:

> Deficient performance means that "counsel's representation fell below an objective standard or reasonableness," considering the circumstances.

> To prove that counsel's performance resulted in prejudice to the defense, a petitioner "must show there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

(citations omitted). The record demonstrates that the post-conviction court properly limited its application of the clear and convincing standard to allegations of fact despite initially stating that both prongs of the *Strickland* test must be proven by clear and convincing evidence. The post-conviction court therefore applied the proper burden of proof in addressing Petitioner's claim of ineffective assistance of counsel. Petitioner is not entitled to relief.

## II.      Ineffective Assistance of Counsel

Petitioner raised several grounds of ineffective assistance of counsel in his petition and amended petition, but narrowed the focus of the post-conviction hearing to trial counsel's performance on the motion in limine filed the day before trial and litigated the morning of trial; the motion to suppress litigated one month before trial; the cross-examination of Deputy Murray at trial; and the motion for new trial. In his brief on appeal, he continues to focus on the same issues, thereby waiving all other grounds of ineffective assistance of counsel. *See* Tenn. Ct. Crim. App. P. 10(b).

Specifically, Petitioner claims trial counsel was ineffective in failing to investigate and prepare for the motion in limine to exclude the text messages from co-defendant Graham's cell phone. He faults trial counsel for failing to do the same when he joined co-

defendant Graham's motion to suppress. Petitioner contends that counsel should have objected pursuant to Tennessee Rule of Evidence 404(b) when Deputy Murray testified that Petitioner admitted to having a drug problem and selling drugs at work. As for the motion for new trial, Petitioner maintains that counsel was ineffective because he failed to raise two issues as inadmissible evidence of prior bad acts under Tennessee Rule of Evidence 404(b). The State responds that the evidence supports the post-conviction court's holding that counsel was prepared to litigate the motion in limine and that it was reasonable and non-prejudicial for counsel not to rely on *Riley*. Insofar as the motion for new trial, the State counters that Petitioner did not establish a reasonable probability that the outcome of the direct appeal would have been different had the omitted issues been addressed under plenary review.

Post-conviction relief is "entirely a creature of statute[.]" *Holland v. State*, 610 S.W.3d 450, 457 (Tenn. 2020) (quoting *Bush v. State*, 428 S.W.3d 1, 15 (Tenn. 2014)). Under the Post-Conviction Procedure Act, relief is limited to "the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Accordingly, "[t]he deprivation of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020) (quoting *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016)).

As stated earlier, to prevail on a claim of ineffective assistance of counsel, a petitioner must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick*, 454 S.W.3d at 457 (quoting *Strickland*, 466 U.S. at 688); *see also Baxter v. Rose*, 523 S.W.2d 930, 932-33 (Tenn. 1975). A defendant asserting ineffective representation must overcome the strong presumption that counsel exercised reasonable judgment in all significant decisions. *Strickland*, 466 U.S. at 687-89; *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Kendrick*, 454 S.W.3d at 458; *Nesbit v. State*, 452 S.W.3d 779, 788 (Tenn. 2014). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. "The fact that a particular strategy or tactical decision failed does not by itself establish deficiency." *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). Courts should therefore not judge counsel's performance with the benefit of hindsight. *Kendrick*, 454 S.W.3d at 458 (citing *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)).

To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Reasonable probability is a lesser burden of proof than preponderance of the evidence. *Kendrick*, 454 S.W.3d at 458 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Because a petitioner must establish both deficiency and prejudice to prevail on a claim of ineffective assistance of counsel, it is not necessary for a court to address both prongs if the petitioner fails to prove one of them. *Strickland*, 466 U.S. at 697; *Nesbit*, 452 S.W.3d at 786-87; *Mobley*, 397 S.W.3d at 80.

A post-conviction court's application of law to its factual findings are reviewed de novo with no presumption of correctness. *Howard*, 604 S.W.3d at 57; *Holland*, 610 S.W.3d at 455; *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). However, the post-conviction court's factual findings are conclusive on appeal unless evidence preponderates against them. *Howard*, 604 S.W.3d at 57 (citing Tenn. R. App. P. 13(d)); *see also Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014); *Fields v. State*, 40 S.W.3d 450, 456, n.4 (Tenn. 2001). Accordingly, as an appellate court, we are not to re-weigh or re-evaluate the evidence, or substitute our inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). In general, we defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Kendrick*, 454 S.W.3d at 457; *Whitehead*, 402 S.W.3d at 621.

A. *Failure to rely on Riley v. California,* 573 U.S. 373 (2014), *in litigation of motion in limine and motion to suppress.*

Petitioner avers that counsel was ineffective in preparing and litigating the motion in limine by failing to rely on *Riley v. California*, 573 U.S. 373 (2014) as supporting legal authority. Petitioner argues that had counsel relied on *Riley,* the trial court would have granted the motion in limine to exclude co-defendant Graham's text messages. Petitioner makes the same argument regarding trial counsel's decision to join co-defendant Graham's motion to suppress the evidence found in the search of her car. Petitioner takes issue with the post-conviction court's finding of "no proof" of prejudice as an abuse of discretion. He asserts that contrary to the post-conviction court's finding, *Riley* demonstrated "proof" of prejudice from trial counsel's deficient performance. The State argues that trial counsel's decision not to rely on *Riley* was neither deficient nor prejudicial because *Riley* was harmful to his position. The State argues further that trial counsel's decision to file the motion in limine despite an unsuccessful motion to suppress, demonstrated "persistence not incompetence."

-16-

When a petitioner complains that counsel was ineffective in litigating a pre-trial motion such as a motion to suppress evidence, he must show that the motion would have been granted and that there was a reasonable probability the outcome of the proceedings would have concluded differently. See *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice"); *see also Tommie Phillips v. State,* No. W2019-01927-CCA-R3-PC, slip op. at *10 (Tenn. Crim. App., at Jackson, Feb. 26, 2021), *perm. app. granted* (Tenn. June 17, 2021) (considering the applicable standard of review in determining a petitioner's burden to establish prejudice where counsel failed to raise a particular ground in a motion to suppress).

In this case, the post-conviction court found trial counsel's testimony to be trustworthy and his recollection of the representation to be reliable:

> During his testimony, [counsel]'s demeanor never changed. He appeared to be thoughtful when answering both direct and cross-examination questions, and he appeared to answer questions openly and honestly. [Counsel] did remember the events of the trial and the events leading up to the trial, even though his memory had failed as to some of the specific questions asked. [Counsel] testified that he met with Petitioner; met with Mr. Whitney Taylor, counsel for the co-defendant, and developed a trial strategy for the Petitioner's case. [Counsel] was not evasive when answering any questions, even those questions where he did not recall specifics. The Court accredits the testimony of [counsel] for these reasons.

We give deference to the post-conviction court's credibility finding because the post-conviction court was in a "better position" to make this determination. "Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses." *See Anthony M. Clark v. State*, No. M2006-01176-CCA-R3-PC, 2007 WL 2295583, at *7 (Tenn. Crim. App., at Nashville, Aug. 6, 2007) (quoting *Gillock v. Board of Professional Responsibility*, 656 S.W.2d 365, 367 (Tenn. 1983)). Accordingly, it carries the weight of a jury verdict. *Rigger v. State*, 341 S.W.3d 299, 307 (Tenn. Crim. App. 2010); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997).

In denying this ground for relief, the post-conviction court made the following findings regarding counsel's performance on the motion in limine and the search of co-defendant Graham's cell phone:

A review of the trial transcript reveals that at trial[,] [counsel] argued that the phone in question was illegally seized and that the contents for the phone were illegally seized or in the alternative, were the fruit of the poisonous tree, and should be suppressed. At the conclusion of the hearing on the motion in limine, the trial court held that the seizure of the phone was consensual, and that the contents of the phone were obtained to a valid search warrant, properly executed. The Court finds that [counsel] was prepared and argued the motion adequately.

The proof does not preponderate against the post-conviction court's factual findings. Because the trial court had already determined that Petitioner lacked standing to assert a constitutional challenge to the search of co-defendant Graham's car and purse, trial counsel testified that he pursued a different strategy to exclude the text messages retrieved from co-defendant Graham's cell phone in the motion in limine. Trial counsel argued that the text messages should be excluded because they were irrelevant, prejudicial, and speculative. *Kevin Wells,* 2016 WL 4054942, at *8. To that end, trial counsel argued that none of the text messages were sent by Petitioner, expressly mentioned him, "pills," or made any direct reference to drugs. *Id.* at *3. In addition, none of the messages were sent or received on the day of the arrest. *Id.* While this strategy did not succeed in excluding the messages, it is entitled to deference because it was a strategy informed by preparation and experience. *Felts*, 354 S.W.3d at 277; *Goad*, 938 S.W.2d at 369.

Moreover, Petitioner cannot show deficient performance and prejudice in trial counsel's decision not to rely on *Riley* in a motion to exclude the text messages retrieved from co-defendant Graham's phone where he advances no argument for his lack of standing. In finding "no proof" of deficient performance and prejudice, the post-conviction court clearly rejected Petitioner's argument that relying on *Riley* would have undermined the outcome of the motion in limine. In *Riley,* the United States Supreme Court held that a warrant is generally required before law enforcement may search a cell phone, "even when a cell phone is seized incident to an arrest." 573 U.S. at 401. However, in *Riley*, the cell phone belonged to the defendant, was seized at the time of his arrest, and was searched without a warrant. *Id*. at 378-79. Here, the cell phone in question did not belong to Petitioner. Thus, Petitioner lacked standing to challenge the constitutionality of the search of co-defendant Graham's phone. *See State v. Jerrico Lamont Hawthorne*, No. E2015-01635-CCA-R3-CD, 2016 WL 4708410, at *25-26 (Tenn. Crim. App., at Knoxville, Sept. 7, 2016) (defendant lacked standing to challenge search of victim and another suspect's cell phones). Petitioner has therefore failed to show that trial counsel's decision not to rely on *Riley* was deficient and prejudicial. *See Christopher Lee Blunkall v. State*, No. M2017-01038-CCA-R3-PC, 2019 WL 104136, at *26 (Tenn. Crim. App., at Nashville, Jan. 4, 2019) (petitioner failed to show that a motion to suppress other people's phone records was ineffective), *perm. appeal denied* (Tenn. Apr. 11, 2019).

And assuming for the sake of argument that Petitioner possessed standing, he cannot show that he would have prevailed on a motion to suppress the text messages with *Riley* as supporting authority. The record shows that co-defendant Graham's cell phone was not searched until a warrant was obtained. In this case, officers seized the phone, made a forensic copy of its digital contents to prevent remote wiping or destruction, and analyzed the phone only after a valid warrant had been obtained. In *Riley*, both defendants conceded that a search under like circumstances would be constitutional. 573 U.S. at 388. Indeed, the United States Supreme Court found it "sensible" for the defendants to concede, based on Supreme Court precedent, "that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant." *Id.* Because there is no evidence in the record to justify granting a motion to suppress, Petitioner has failed to demonstrate prejudice. He is not entitled to relief.

### B. *Failure to object to Deputy Murray's Testimony*

Petitioner claims trial counsel was ineffective in failing to object to Deputy Murray's testimony that Petitioner admitted in his interview to having a drug problem and to selling drugs at his workplace. Petitioner argues that had trial counsel objected, Deputy Murray's testimony would have been excluded as a prior bad act under Tennessee Rule of Evidence 404(b). The State argues that trial counsel made a tactical decision during Deputy Murray's testimony which is entitled to deference.

The post-conviction court found trial counsel's strategy of questioning Deputy Murray's recollection of the interview as a reasonable strategy:

> [Trial Counsel] testified that he did not object to the admissibility of the statement of the Petitioner as related by De[puty] Murray. [Trial Counsel] testified that as a part of his trial strategy, he cross examined De[puty] Murray about the procedures and policies of the Sullivan County Sheriff's Office of not recording, either by audio or video, statements of defendants. He also wanted to attack the credibility of De[puty] Murray by testing his memory of the events surrounding the statement. Finally, he testified that he wanted to use that line of attack as argument to the jury. This Court cannot say that this was an unreasonable trial strategy, when coupled with the strategy of having the co-defendant testify and explain that the drugs were hers. The Court finds that trial counsel made a reasonable decision as part of his trial strategy and trial theory.

We agree. Trial counsel testified that he did not want to bring undue attention to Petitioner's drug problem or drug dealing at his workplace or lose credibility with the jury by making a potentially meritless objection. Instead of objecting, trial counsel chose to attack Deputy Murray's recollection of Petitioner's statement to undermine his credibility. The record shows that trial counsel questioned Deputy Murray at length about the sheriff's

-19-

office policy on recording witness statements. Deputy Murray testified that all the deputies who were present for the interview had tape recorders but that none of them chose to record the interview. Deputy Murray acknowledged that nothing prevented them from recording the interview and that his recollection of Petitioner's statements might have differed from the other officers who were also present for the interview. According to trial counsel, cross-examining Deputy Murray did not undermine the defense theory that the drugs found in co-defendant Graham's car and purse belonged to her. To that end, co-defendant Graham testified that she was using the drugs to help her grieve, not to sell them illegally. In addition, Petitioner has not demonstrated that an objection would have been sustained. Based on these circumstances and the defense theory advanced at trial, we likewise conclude that trial counsel's strategy to cross-examine Deputy Murray instead of objecting to his testimony about Petitioner was reasonable. Petitioner is not entitled to relief.

### C. Motion for New Trial

Petitioner contends that trial counsel was ineffective in omitting two issues in the motion for a new trial: (1) the admissibility of the text messages in co-defendant Graham's cell phone under Tennessee Rule of Evidence 404(b) and (2) the admissibility of Detective Murray's testimony that Petitioner admitted to having a drug problem and selling drugs at his workplace. The State counters that trial counsel's decision not to raise a meritless claim was reasonable and that full consideration of the omitted issues would not have changed the outcome of the case.

On direct appeal, both omitted issues were deemed to have been waived, but the issue regarding the admissibility of co-defendant Graham's text messages was reviewed for plain error which is an avenue defendants may seek on appeal for relief. "Plain error review is a path defendants are permitted to pursue on appeal, and the failure to properly raise an issue in a motion for new trial does not entirely close the door on a defendant's ability to obtain relief on direct appeal." *Howard,* 604 S.W.3d at 63, n.7. "[T]he failure to have plenary review of certain issues does not result in a complete failure to subject the State's case to adversarial testing as the defendant is still permitted to seek plain error review on additional issues not properly raised in a motion for new trial." *Id.* at 62; *see also State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).

Although Petitioner does not attack the performance of appellate counsel, the law relative to an appellate counsel's failure to raise a particular issue is relevant here. If a petitioner claims ineffective assistance of counsel based on the failure to raise an issue, we must determine whether the omitted issue had merit. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004). To do so, we consider the following non-exhaustive list of questions:

1) Were the omitted issues "significant and obvious"?

2) Was there arguably contrary authority on the omitted issues?

3) Were the omitted issues clearly stronger than those presented?

4) Were the omitted issues objected to at trial?

5) Were the trial court's rulings subject to deference on appeal?

6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7) What was appellate counsel's level of experience and expertise?

8) Did the petitioner and appellate counsel meet and go over possible issues?

9) Is there evidence that counsel reviewed all the facts?

10) Were the omitted issues dealt with in other assignments of error?

11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Id.* at 888 (citing *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999)). A petitioner cannot prevail on an ineffective assistance of counsel claim if the omitted issue lacked merit. *Id.* at 887-88. If an issue lacks merit, counsel's performance cannot be deficient for not raising it. *Id.* at 887. Similarly, a petitioner experiences no prejudice from failing to raise a meritless issue. *Id.*

Because this court must consider the merits of an omitted issue, "A petitioner who argues that issues presented in the trial court should have been preserved for appellate review must at the very least convince the appellate court and the post-conviction court the omitted issues had merit. Obviously, the best way to show that is to present a legal argument for each issue." *Larry McNutt v. State*, No. W2016-01086-CCA-R3-PC, 2017 WL 4004172, at *7 (Tenn. Crim. App., at Jackson, Sept. 8, 2017).

Petitioner complains that trial counsel's failure to raise the admission of the text messages in the motion for new trial resulted in a waiver of that issue on direct appeal. The post-conviction court dismissed this claim on the grounds that it had been previously determined under Tennessee Code Annotated § 40-30-106(h). On direct appeal, this court agreed with the State that the issue was waived for failure to raise in the motion for new trial. Waiver notwithstanding, this court held that the admission of the text messages did not withstand plain error review because no clear and unequivocal rule of law had been breached. *Kevin Wells*, 2016 WL 4054942, at *8-9. In addressing the admissibility of the text messages for plain error, this court concluded:

-21-

Here, the State was required to show that the appellant knowingly possessed the pills with intent to sell or deliver them. Although the messages at issue did not specifically mention "pills," they discussed the delivery of small numbers of items and the appellant's use of the Mustang, in which the police later found pills, to deliver those items. The trial court held a hearing outside the jury's presence, ruled that the instant messages were relevant to the defendants' intent to sell pills, and ruled that the probative value was not outweighed by the danger of unfair prejudice. The court obviously found that proof of the other crime, wrong, or act was clear and convincing. Thus, we conclude that no clear and unequivocal rule of law was breached and that the appellant is not entitled to plain error relief.

*Id.* at *9 (internal citation omitted).

While trial counsel's failure to challenge the admissibility of the text messages in the motion for new trial was not previously determined, we affirm the post-conviction court's denial of relief because Petitioner has failed to show that the end result of his appeal would have been the different had this issue been raised in the motion for new trial. *See, e.g., State v. Hester*, 324 S.W.3d 1, 21, n.9 (Tenn. 2010) (reviewing court may affirm a judgment on different grounds than those relied upon by the lower court when the lower court has reached the correct result). This court's review of the same issue for plain error strongly suggests that the outcome of the direct appeal would not have been different under plenary review.

Because the trial court complied with the procedures under Tennessee Rule of Evidence 404(b) before admitting the text messages, its judgment was subject to abuse of discretion under plenary review. *Kevin Wells*, 2016 WL 4054942, at *8 (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)). Under that standard, the trial court's judgment was subject to deference because a reviewing court will not interfere with a trial court's decision absent an abuse of discretion. *Carpenter*, 126 S.W.3d at 892 (in addressing the merits of an omitted issue, a reviewing court must consider the trial court's ruling on the issue and whether the ruling is subject to deference on appeal); *State v. William Thomas Mayers*, No. M2014-01704-CCA-R3-PC, 2016 WL 1268515 at *7-9 (Tenn. Crim. App., at Nashville, Mar. 31, 2016) (waiver of *Ferguson* issue on appeal did not prejudice petitioner where a review of the waived issue showed that the trial court's ruling was not an abuse of discretion).

Petitioner advances no argument for how the trial court abused its discretion by admitting the text messages as evidence of his intent. *Id.* (citing Tenn. R. Evid. 404(b), Advisory Comm'n Cmts). In reviewing the omitted issue for prejudice, we review the trial court's decision for abuse of discretion. In this case, the text messages discussed the delivery of small number of items and Petitioner's use of the Mustang to deliver those

items. *Kevin Wells*, 2016 WL 4054942, at *9. Petitioner was arrested shortly after he was seen driving the same Mustang, and a consensual search of co-defendant Graham's purse yielded the following assortment of pills:

> A pill bottle in the purse was prescribed to Graham and contained two dihydrocodeinone pills. A second bottle in the purse was prescribed to Graham for promethazine but contained oxycodone. A third bottle in the purse was prescribed to Graham for oxycodone but was empty. A fourth bottle in the purse was prescribed to Graham for diazepam and contained diazepam. A bottle of Equate gas relief pills in the purse contained three pink pills that were oxycodone, fifteen milligrams.

*Id.* at *3. We conclude that the trial court properly exercised its discretion in admitting the text messages as evidence of Petitioner's intent. Consequently, Petitioner has failed to show that trial counsel's omission of this issue in the motion for new trial was ineffective. Petitioner is not entitled to relief.

Likewise, Petitioner advances no argument for a successful motion for a new trial or direct appeal had the issue of Deputy Murray's testimony not been waived on appeal. We find no prejudice in trial counsel's decision to omit this issue from the motion for new trial. Trial counsel had a strategic reason for not objecting to the testimony at trial, and his justification for omitting the issue was reasonable. *Carpenter*, 126 S.W.3d at 892. Given the defense strategy of having co-defendant Graham testify that the drugs belonged to her in helping her grieve the recent death of a loved one, trial counsel chose to attack Deputy Murray's recollection of the interview rather than object. Additionally, trial counsel testified that he did not want to bring unwanted attention to Petitioner's drug problem or drug dealing at his workplace or be on the losing side of a meritless objection. The record shows that Deputy Murray and his fellow deputies chose not to record the interview although a device was available to do so. On cross-examination, Deputy Murray conceded that his recollection of the interview might differ from the other officers who were present for Petitioner's interview. We hold that under the facts of this case, this strategic decision was reasonable, and omission of this issue was not prejudicial. Petitioner is not entitled to relief.

### III.    Delay of the Post-conviction Court's Order

Lastly, Petitioner contends the post-conviction court violated the post-conviction statute by entering its order more than sixty days after the post-conviction hearing. *See* T.C.A. § 40-30-111(d) ("[T]he court shall rule within sixty (60) days of conclusion of the proof."); *see also* Tenn. Sup. Ct. R. 28, § 9(A). While the use of the word "shall" signifies the mandatory nature of the post-conviction court's duty to enter a timely order, the same provision of the statute permits an extension of this deadline "by order of the court" where "unforeseeable circumstances render a manifest necessity." T.C.A. § 40-30-111(d). The

delay shall not exceed thirty (30) days.  *Id.*  It is undisputed that the order did not comply with the sixty-day deadline.  The hearing was on January 30, 2020; the court filed its order on August 31, 2020.  However, the record shows that the post-conviction court filed two notices to extend the deadline due to "unforeseeable circumstances" connected to the COVID-19 pandemic.

Petitioner concedes that there is no relief or sanction under the Post-Conviction Procedure Act from a delayed entry of an order.  "[T]here is no indication from the language of the Post-Conviction Procedure Act that a petitioner is entitled to relief simply because of non-compliance of performing an act within a certain period of time."  *Larry G. Henderson v. State,* No. M2005-02780-CCA-R3-PC, 2007 WL 258436, at *5 (Tenn. Crim. App., at Nashville, Jan. 23, 2007) (quoting *Juan Alfonzo Hill v. State*, No. E2004-02915-CCA-R3-PC, 2005 WL 2276422, at *8 (Tenn. Crim. App., at Knoxville, July 26, 2005)).

Petitioner maintains that he suffered prejudice from the delay in the entry of the order apart from imprisonment.  He does not describe the prejudice but appears to demand another hearing:

> Should this Court find cause to remand this matter back to the post-conviction court, then Petitioner's trial counsel will have a chance to appear better prepared to discuss his trial strategy at a new hearing.

At oral argument, Petitioner urged this court to remand this case as was done recently in *Darryl Robinson v. State,* No. W2020-00942-CCA-R3-PC, 2021 WL 3642399, at *1 (Tenn. Crim. App., at Jackson, Aug. 18, 2021), *perm. app. filed* (Tenn. Sept. 16, 2021).

We are unconvinced by Petitioner's argument for a "new hearing" and find his reliance on *Darryl Robinson* to be misplaced.  While we certainly do not condone a failure to comply with the statute, Petitioner here has asserted no prejudice to warrant relief in the manner of a "new hearing" where he admits that he received one that was full and fair.  Assuming arguendo that a remedy exists for a delay in the nature of a new hearing, Petitioner does not allege how he was prejudiced by a seven-month delay in the midst of a global pandemic.  *See Kevin Wade Cloyd v. State,* No. E2003-00125-CCA-R3-PC, 2003 WL 22477866, at *17-18 (Tenn. Crim. App., at Knoxville, Nov. 3, 2003) (judgment denying post-conviction relief affirmed where Petitioner received a full and fair hearing and where he failed to allege prejudice in spite of a fourteen (14) month delay between hearing and order pre-COVID-19 pandemic); *Mirack R. Smith v. State*, No. W1999-01566-CCA-R3-PC, 2001 WL 128550, at *3-4 (Tenn. Crim. App., at Jackson, Feb. 9, 2001) (Riley, J., concurring) (affirming denial of post-conviction relief despite delay of two years and seven months between hearing and issuance of order pre-COVID-19 pandemic); *Juan Alfonzo Hill v. State*, No. E2004-02915-CCA-R3-PC, 2005 WL 2276422, at *9 (Tenn. Crim. App., at Knoxville, Sept. 19, 2005) (petitioner entitled to no relief due to extensive

-24-

delay from filing of the petition to the issuance of a final order where the record contradicted Petitioner's assertion of prejudice).

Moreover, this case does not compare to the situation in *Darryl Robinson,* where the post-conviction court held that the petitioner had waived or abandoned one of his claims for failure to present proof and declined to give a factual summary of the post-conviction evidence and make conclusions of law. 2021 WL 3642399, at *4-6. The record contradicted the post-conviction court's holding of waiver due to a lack of proof. *Id.* at *6. Under those circumstances, this court agreed with the petitioner that the case should be remanded for the post-conviction court to make a more definitive order with detailed findings of fact and conclusions of law to facilitate meaningful appellate review. *Id.* at *6. The case was not remanded for a new hearing. In this instance, the post-conviction court gave a detailed and lengthy order sufficient for this court to conduct meaningful review. De novo review of the record shows that the post-conviction court notified the parties of each delay and provided understandable and extraordinary reasons for the delays. Petitioner has not asserted prejudice to justify a new hearing based on the post-conviction court's seven-month delay in issuing its order. We affirm the post-conviction court's judgment denying relief.

## CONCLUSION

For the foregoing reasons, the judgment of the post-conviction is affirmed.

_____
JILL BARTEE AYERS, JUDGE

-25-